UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
10-cv-61813-Jordan/McAlliey

MICHAEL P. BRANNON, Psy.D.,
Individually, MICHAEL P. BRANNON,
Psy.D., P.A., a Florida professional
Services corporation; and INSTITUTE
FOR BEHAVIORAL SCIENCES AND
THE LAW, LLC, a Florida limited
liability company,

    Plaintiff,

v.

HOWARD FINKLESTEIN, in his
Official capacity as Broward County
Public Defender,

    Defendant.
_____/

## DEFENDANT HOWARD FINKLESTEIN'S MOTION TO DISMISS COMPLAINT

    COMES NOW, the Defendant, HOWARD FINKLESTEIN (hereinafter Defendant), by and through the undersigned counsel, hereby files this Motion to Dismiss Plaintiffs' MICHAEL P. BRANNON, MICHAEL P. BRANNON, P.A, and INSITUTE FOR BEHAVIORAL SCIENCES AND THE LAW, LLC (Collectively referred to as Plaintiff) Complaint, pursuant to Fed.R.Civ.P.12(b)(6), 12(e) and (f), and in support of same states the following:

Defendant's motion to dismiss is based on the following grounds:

I.    Plaintiff's first amendment retaliation claim for monetary damages against the Defendant in his official capacity is barred by the Eleventh Amendment.

1

II.     Plaintiff wholly fails to plead a basis for injunctive or declaratory relief.  In addition, Plaintiff's requested relief consists solely of damages for the Defendant's alleged past actions. Any such retroactive relief is barred by the Eleventh amendment.

III.    Plaintiff fails to state a cause of action under 42 U.S.C. 1983 ("Section 1983"):

(1) Plaintiff's complaint does not state a plausible claim for relief under Section 1983 because the Public Defender's office has an absolute right to decide what expert witnesses it utilizes, and its motive for such decisions cannot be subject to Section 1983 scrutiny.  As a result, it is not possible for the Plaintiff to state a cause of action under Section 1983. In addition, Plaintiff wholly fails to offer sufficient facts to show that the Defendant did anything wrong, let alone substantiate a causal connection between the Defendant's alleged retaliatory actions and an adverse effect on his speech as well as a retaliatory motive of any kind.

(2) The Defendants purported reduction of cases referred to the Plaintiff was the result of decisions made in the course of the Public Defender's Office representation of indigent clients, and therefore does not constitute state action under Section 1983.

(3) Plaintiff does not, and cannot, show an adverse effect on the exercise of his First Amendment rights.

## I. STATEMENT OF THE CASE

Plaintiff sues the Defendant in his official capacity as Public Defender for the 17th Judicial circuit of Florida under 42 U.S.C. § 1983 (Section 1983), alleging First Amendment retaliation.  Plaintiff seeks monetary damages as well as a declaratory judgment and injunctive relief.

The Plaintiff's Complaint contains speculative, unsubstantiated allegations - including conversations overheard in parking lots - that never show any wrong doing on the part of the Defendant, and as such cannot state a plausible claim for relief under Section 1983.  Plaintiff alleges that the Defendant and the Public Defender's Office reduced the cases they referred to him after he testified before the Judicial Qualifications Commission ("JQC) on December 6, 2007. (Complaint, ¶ 9).   A "few days" after that testimony, Plaintiff alleges that Michael Gottlieb, a local criminal defense lawyer, overheard the Defendant say "Did you heard [sic] what Brannon did? He testified for Aleman. He's going to get a big surprise in the work that he gets." (Complaint, ¶ 14).  Plaintiff further alleges that the Defendant "prevailed upon Chief Judge Victor Tobin" to adopt a "rotation for the appointment of court psychologist."   (Complaint, ¶ 17).  Plaintiff then turns to the Defendant's assistants, claiming they retaliated against him as well.  Assistant Public Defenders objected to "Brannon's appointment" by the Courts and the Broward County State Attorney's Office. (Complaint ¶¶ 19, 20). Another allegation states that Douglas Brawley, a Chief Assistant Public Defender, approached a County Judge, stating that the Public Defenders office is "not using Dr. Brannon anymore."   (Complaint, ¶ 21).

None of these allegations can ever give rise to a plausible claim for relief under Section 1983. As attorneys charged with representing indigent defendants, the Public Defender's Office has an absolute right to choose what expert witnesses to hire.  Any decisions the Public Defender's Office makes with regard to the hiring of expert witnesses is integral to its function as criminal defense attorneys and cannot be subject to a claim under Section 1983.  For the many reasons explained below, Plaintiffs' complaint is deeply flawed and must be dismissed.

## II. ARGUMENT AND MEMORANDUM OF LAW

**A. Plaintiff's suit for monetary damages against the Defendant in his Official Capacity is barred by the Eleventh Amendment**

The Eleventh Amendment to the United States Constitution cautions that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or Citizens or Subjects of any Foreign State." The Eleventh Amendment bars a suit for damages against a State or its agencies in federal court when the action "is in essence one for the recovery of money from the state."[1] *Edelman v. Jordan*, 415 U.S. 651, 672 (1974) (citations omitted). *See also, Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 65 (1996) (Eleventh Amendment reflects "fundamental principle of sovereign immunity [that] limits the grant of judicial authority in Article III of the U.S. Constitution"); *Manders v. Lee*, 338 F.3d 1304, 1308 n.8 (11th Cir. 2003) (en banc) (Eleventh Amendment bars damage suits brought in federal court against an "arm of the State") (citations omitted). Based on well-established Eleventh Amendment principles, when a Plaintiff brings suit under Section 1983, he cannot bring suit against the state, or a state official, seeking monetary damages, or any form of "retrospective relief." *Alden v. Maine*, 527 U.S. 706, 713 (1999).

---

[1] The Supreme Court in *Will v. Michigan,* 491 U.S. 58 (1989) succinctly explained: "*Section 1983* provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The *Eleventh Amendment* bars such suits unless the State has waived its immunity . . . or unless Congress has exercised its undoubted power under *§ 5 of the Fourteenth Amendment* to override that immunity. That Congress, in passing *§ 1983*, had no intention to disturb the States' *Eleventh Amendment* immunity and so to alter the federal-state balance in that respect was made clear in our decision in *Quern*." (Citations omitted).

In his Complaint, Plaintiff seeks monetary damages for "lost earnings; diminishment of earning capacity and emotional distress and mental anguish." (Complaint, ¶ 25). Since he is suing the Defendant in his official capacity, the Plaintiff is barred from seeking any monetary damages from the Defendant.

**B. Plaintiff is not entitled to declaratory and injunctive relief.**

In the introduction to his Complaint, the Plaintiff states that he sues the Defendant pursuant to Section 1983 seeking "declaratory and injunctive relief." (Complaint, ¶ 1). At no time, however, does he ever plead an entitlement to any such relief. It is well established that "a plaintiff must demonstrate standing separately for each form of relief sought." *Friends of earth v. Laidlaw Envtl. Serv.,* 528 U.S. 167, 185 (2000). Plaintiff wholly fails to plead any basis whatsoever for either declaratory or injunctive relief.

In order to plead a basis for injunctive relief, the party must demonstrate a substantial likelihood of irreparable injury, which is "neither remote nor speculative, but actual and imminent." *Siegel v. LePore,* 234 F.3d 1163, 1176-77 (11th Cir. 2000). Plaintiff completely fails to plead any facts that demonstrate "imminent" future harm to his rights under the First Amendment. In fact, the only relief requested by the Plaintiff is compensation for supposed past wrongs, namely the reduction of his referrals from the Public Defender's Office. At no time does Plaintiff establish an actual threat to the exercise of his constitutional rights, which he must do to be entitled to injunctive relief.

Even if he were to properly state and substantiate the essential elements of a request for injunctive relief, any request that is premised on alleged past harm is barred by the Eleventh Amendment. Plaintiffs may obtain prospective relief from state officers sued in their official

5

capacities that is designed to enjoin unconstitutional or otherwise unlawful conduct. *Ex parte Young,* 209 U.S. 123 (1908); *See, e.g., Milliken v. Bradley,* 433 U.S. 267 (1977). However, a Plaintiff cannot seek relief that requires the Defendants to expend state resources to remedy past wrongs. As the Eleventh Circuit states succinctly in *Luckey v. Harris*, 860 F.2d 1012 (11th Cir, 1988), "the touchstone . . . is whether an expenditure is a necessary result of compliance with decrees which by their terms [are] prospective in nature, or a goal in itself." [2] Because the only relief specifically stated by the Plaintiff concerns damages for "lost earnings", "diminishment of earning capacity" and "emotional distress and mental anguish", the "expenditure" demanded is unquestionably retroactive in nature. Thus, under the circumstances alleged in the complaint, the Plaintiff cannot state a basis for injunctive relief.

Even if Plaintiff actually stated a request for declaratory relief, any such request would likewise be barred by the Eleventh Amendment. In *Green v. Mansour,* 474 U.S. 64, 73 (1985), the Court held that "declaratory relief against the state is not within the *Young* doctrine and is barred by the Eleventh amendment when there are no ongoing or threatened violations of federal law, but only a dispute about a state official's past actions." At no time does the Plaintiff allege "ongoing or threatened violations of federal law." Instead, Plaintiff alleges that he has suffered damages as a result of a supposed past wrong, the reduction of his referrals from the Public Defender's Office. As a result, because the entire thrust of his complaint is an attempt to seek redress for alleged past wrongs, he also cannot state a basis for declaratory relief.

---

[2] *See also, Papasan v. Allain,* 478 U.S. 265 (1986), where the Court held that the eleventh amendment barred attempts to require state officials to pay to some local school boards yearly income based on amounts that had been generated by lands set aside to fund local education before the lands were sold by state officials. The Court further noted that the determining factor is the theory of the relief sought.

In sum, Plaintiff wholly fails to plead any of the required elements, nor any basis for declaratory and injunctive relief. Furthermore, it is clear that because his complaint is premised on alleged harm that has already occurred he cannot plead a basis for declaratory or injunctive relief without running afoul of the Eleventh Amendment.

**C. Plaintiff fails to state a cause of action for first amendment retaliation**

1. Elements of a claim for first amendment retaliation under Section 1983

To establish a claim under 42 U.S.C. § 1983, Plaintiff must allege and ultimately prove that (1) the Defendant deprived him of a right secured under the United States Constitution or federal law, and that (2) such deprivation occurred under color of state law. *Arrington v. Cobb County,* 139 F.3d 865, 872 (11th Cir.1998). A person bringing suit pursuant to Section 1983 must allege an underlying constitutional or statutory right that the entity or official acting under color of state law has violated. *U.S. Steel, LLC v. Tieco, Inc.,* 261 F.3d 1275, 1288 (11th Cir. 2001). In addition, plaintiff must allege and establish an affirmative causal connection between the defendant's conduct and the constitutional deprivation. *Troupe v. Sarasota County, Fla.,* 419 F.3d 1160, 1165 (11th Cir.2005); *Marsh v. Butler County, Ala.,* 268 F.3d 1014, 1059 (11th Cir.2001). Thus, the initial question in a Section 1983 action is whether the plaintiff has alleged a deprivation of a constitutional right. *See, County of Sacramento v. Lewis,* 523 U.S. 833, 841 n. 5 (1998) ("[a]s in any action under § 1983, the first step is to identify the exact contours of the underlying right said to have been violated").

To state a First Amendment Retaliation claim, the United States Court of Appeals for the Eleventh Circuit has stated that a plaintiff "must establish first, that his speech or act was constitutionally protected; second, that the defendant's retaliatory conduct adversely affected the

7

protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on speech." *Bennett v. Hendrix,* 423 F.3d 1247, 1250 (11th Cir. 2005).

2. The Defendant did not act under color of state law.

When carrying out their responsibility to represent indigent clients, Public Defenders do not act under color of state law and are therefore not subject to Section 1983 liability. *Polk County v. Dodson,* 454 U.S. 312 (1981); *see also, Moore v. Bargstedt,* 203 Fed. Appx 321 (11th Cir. 2006). In *Polk County,* the Supreme Court reasoned because Public Defenders representing indigent criminal defendants act with undivided loyalty to their clients and as adversaries to the state, they do not act on behalf of the state. *Id*. At the same time, the Court also carved out an administrative function exception: "It may be ... that a public defender also would act under color of state law while performing certain administrative and possibly investigative functions" *Id.* at 325.

The Public Defender's Office is subject to 1983 liability only insofar as it performs administrative functions. *See, e.g. Branti v. Finkle,* 445 U.S. 507 (1988)*; see also, Miranda v. Clark County,* 319 F.3d 465 (9th Cir. 2003). The subject matter of both *Branti* and *Miranda* do not implicate decisions made by individual attorneys in the furtherance of representing a client.

Our case, on the other hand, directly involves a fundamental decision made by an attorney representing his client—the ability to decide what expert witness to utilize.[3] It is axiomatic that the decision of what witnesses to retain and call must be left exclusively to the criminal defense attorney. Plaintiff's allegations regarding the reduction of the cases he received

---

[3] *See* ABA Standards, the Defense Function, Standard 4-5.2 (b), which states, "Strategic and tactical decisions should be by defense counsel after consultation with the client where feasible and appropriate. **Such decisions include what witnesses to call** . . ." (Emphasis added).

8

from the Defendant encroaches upon the Public Defender's essential discretion to make the necessary choices required to vigorously represent their clients. The fact that Plaintiff's cases were reduced can only be the result of the Public Defender's Office deciding what expert witnesses to utilize.  Any decision made regarding when and where to use an expert witness must be left to the discretion of the Public Defenders Office, not the expert witness or even the Court. Such strategic decisions are inextricably linked to the traditional role of defense counsel and cannot be subject to Section 1983 liability.

In addition, Plaintiff offers the actions taken by individual Assistant Public Defenders in specific cases as proof of a retaliatory motive against him. Plaintiff alleges that Assistant Public Defenders objected to his appointment on "the grounds that he was biased against Finklestein's office . . ." (Complaint, ¶ 18).  Likewise, Plaintiff alleges that "Finklestein's assistants made objections to Brannon's appointment by the court as a competency examiner", and goes on to allege a specific case, *State of Florida v. Ivory McCutcheon*. (Complaint ¶ 19).   Plaintiff also claims that the Public Defender's office "attempted to interfere with Brannon's being retained by the State Attorney's Office, i.e., **unsuccessfully filing a motion to strike him as a witness**. . ." (emphasis added).  (Complaint ¶ 20)    All of these allegations concern decisions made in the context of the Public Defender's Office representation of its indigent clients, and as such cannot be considered state action under Section 1983.

Even if the Plaintiff's alleged reduction in case load came from the institution of a policy established by the Defendant as the elected Public Defender and head of the Office, it nonetheless directly effects the representation of clients by the office on the crucial question of which expert witness to hire, and this cannot be considered state action.  For instance, in *Powell*

9

*v. David,* 415 F.3d 722 (7th Cir 2005), the court held that a public defender's decision to implement a "first-in, first out" policy with regard to management of cases, did not amount to state action: ". . . first-in, first-out policy for handling cases, no matter how ill-conceived it may be, is akin to the **traditional functions of a law firm** in organizing caseload among its lawyers, and therefore is not state action." (emphasis added). Regardless of whether the result of an office-wide policy or individual decisions made by Assistant Public Defenders, all decisions regarding when and which expert witnesses to hire implicates the "traditional functions of a law firm" in representing its clients, and cannot be the basis of Section 1983 liability.

The allegations in the complaint implicate the traditional defense counsel function of deciding what witnesses to call on behalf of a client and rely on specific actions taken by Assistant Public Defenders in the course of representing their clients. Accordingly, the subject matter of the complaint is limited to the Public Defender's actions as litigators in particular cases, and do not in any way relate to the Defendant's role as administrator of a government office. Therefore, pursuant to *Polk County,* these allegations cannot state a cause of action under Section 1983 because they involve actions taken by the Public Defender's Office on behalf of clients and were not under color of state law.

3.  Plaintiffs cannot show that any action taken by the Public Defenders Office had an adverse effect on his ability to exercise his first amendment rights.

A Plaintiff must plead and prove that "the defendant's retaliatory conduct adversely affected the protected speech." *Bennett v. Hendrix,* 423 F.3d 1247, 1250 (11th Cir. 2005). First Amendment retaliation is actionable because "it threatens to inhibit exercise of the protected

right."[4]  *Id.*  The Plaintiff must have suffered an adverse effect on the exercise of their First Amendment rights. *Bennett,* 423 F.3d at 1252. A plaintiff suffers adverse action "if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Id.* at 1250.  However, in a case heavily relied upon in *Bennett,* the Fourth Circuit stated that while it is not dispositive, the plaintiff's "actual response to the defendant's conduct provides some evidence of the tendency of that conduct to chill First Amendment activity." *Constantine v. Rectors and Visitors of George Mason University,* 411 F.3d 474, 500 (4th Cir.2005).

In Plaintiff's complaint, the alleged protected act was his testimony in support of Judge Aleman, a singular event that will not reoccur in the future.   Plaintiff's complaint seeks redress not from a deprivation of Plaintiff's First Amendment rights, but from the Public Defender's alleged reduction of its expert witness referrals to him, something he has no constitutional, nor contractual, right to receive, and something which is wholly unrelated to the exercise of his first amendment rights.[5] Nowhere in the complaint does the Plaintiff plead a single fact that shows Plaintiff was inhibited in the exercise of his first amendment by the Defendant in any way. Instead, Plaintiff complains solely about the money he has lost because of the Public Defender's alleged decision to reduce the cases it refers to him. As a result, Plaintiff wholly fails to plead

---

[4] Although Plaintiffs need not actually have been deprived of their First Amendment rights in order to establish a claim of retaliation, the Plaintiffs must show that the defendants' conduct resulted in something more than a "de minimis inconvenience" to the exercise of their First Amendment rights. *See, Id.* at 1252; *Cate v. Oldham,* 707 F.2d 1176, 1189 (11th Cir.1983).

[5] In the Due Process context, for instance, there is no right to employment as an expert witness: "in order to have a property interest protected by procedural due process, a person "must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it." *Wofford v. Glynn Brunswick*, 864 F.2d 117 (11th Cir. 1989), *citing*, *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972).

any facts that show the Defendant's actions had "an adverse effect" on the exercise of his First Amendment rights, as he must.

<u>4. Plaintiff fails to plead sufficient facts to establish a causal connection between the alleged retaliatory acts and the adverse effect on speech.</u>

The purpose of a motion to dismiss for failure to state a claim upon which relief can be granted is "to allow the court to eliminate actions that are fatally flawed in their legal premises and destined to fail, and thus spare litigants burdens of unnecessary pretrial and trial activity." *Advanced Cardiovascular Systems, Inc. v. Scimed Life Systems Inc.*, 988 F.2d 1157 (8th Cir. 1993). With this in mind, the Supreme Court recently explained the "working principles" of a Court's review of complaint pursuant to a Defendant's motion to dismiss. *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009). First, the Court held that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* Second, restating the plausibility standard articulated in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, (2007), the Court held that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show [n]'-'that the pleader is entitled to relief.' " *Id.* at 1950 (quoting Fed.R.Civ.P. 8(a)(2)). The Court further stated that courts considering motions to dismiss adopt a "two-pronged approach" in applying these principles: 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* Importantly, the Court held in *Iqbal,* as it had in *Twombly,* that courts may infer from the factual allegations in the complaint "obvious alternative explanation[s]," which suggest lawful conduct rather than the

unlawful conduct the plaintiff would ask the court to infer. *Id.* at 1951-52 (quoting *Twombly,* 550 U.S. at 567).

In accordance with the principles stated in *Twombly* and *Iqbal*, like complaints in all other civil cases, complaints in Section 1983 cases must now " 'contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory.' " *Bryson v. Gonzales,* 534 F.3d 1282 (10th Cir.2008) ( *quoting In re Plywood Antitrust Litigation,* 655 F.2d 627, 641 (5th Cir. Unit A 1981), *quoted with approval in, Twombly,* 550 U.S. at 562.

In our case, Plaintiff fails to plead sufficient facts that "plausibly give rise to an entitlement to relief." In its Complaint, the Plaintiff claims that the cases he received from the Broward Public Defender's Office were reduced because of his testimony in support of Judge Aleman to the Judicial Qualifications Commission. As evidence of this, the Plaintiff claims that a local attorney "overheard" a conversation in a parking lot where the Defendant stated that Plaintiff "was going to get a big surprise in the work that he gets." (Complaint ¶ 13). The Plaintiff further alleges that the Defendant "prevailed" upon Chief Judge Victor Tobin to adopt a rotation of psychologists eligible for court appointment. Then, the Plaintiff continues on to allege that Assistant Public Defenders began to object to his appointment as an expert. These allegations do not give rise to a plausible claim for relief.

The Plaintiff offers the Public Defender's alleged decision to reduce his cases as proof of the Defendant's motive to retaliate against him. However, Plaintiff cannot maintain this claim without overriding the Public Defender's absolute right to decide what witnesses to utilize and its absolute autonomy to decide how to represent its clients without fear of outside scrutiny. First,

seeking a rotation of psychologists, which is what Plaintiff alleges the Defendant sought from Chief Judge Tobin, is a perfectly lawful action, one justifiable as means of ensuring diversity in the appointment of experts. Second, the decisions made by assistant public defenders in individual cases regarding whether to use the Plaintiff as an expert, or object to his use by the prosecution, can be justified by a variety of strategic decisions made during the course representation of their indigent clients. All of these alleged actions fall within the Defendant and his assistant's function as criminal defense attorneys.

Plaintiff's allegations must be considered in the context of the Public Defender's obligation as criminal defense attorneys to its clients.[6] When viewed in this way, it is clear that Plaintiff's Complaint is "destined to fail" because the Plaintiff could never allege causation, a retaliatory motive, or any claim under Section 1983 without impermissibly infringing upon the Public Defenders absolute right to represent its clients in any manner it sees fit. As a result, Plaintiff cannot offer any "viable legal theory" upon which to recover against the Defendant.

5. Plaintiff fails to allege a retaliatory motive

An essential element of a First Amendment claim under Section 1983 is the existence of a retaliatory motive. *See Gattis v. Brice,* 136 F.3d 724, 726 (11th Cir.1998) ("To succeed in a Section 1983 suit based on a claim of retaliation for speech, the plaintiff must show that his speech was a 'substantial' or 'motivating' factor in the allegedly retaliatory decision."). *See also Farrow v. West,* 320 F.3d 1235, 1240 (11th Cir.2003). A plaintiff must do more than make "general attacks" upon a defendant's motivations and must articulate "affirmative evidence" of

---

[6] As the Supreme Court in *Iqbal* noted: "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its **judicial experience and common sense.** *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009)(emphasis added).

14

retaliation to prove the requisite motive. *Crawford-El v. Britton,* 523 U.S. 574, 600, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998) (citations omitted). In other words, Plaintiff must provide "a sequence of events from which one could . . . plausibly refer a retaliatory motive." *Smith v. Florida Dep't of Corrections,* 2010 WL 1377351 (11th Cir. 2010).

Plaintiff alleges that "Brannon's favorable testimony about Aleman was a substantial or motivating factor in Finklestein's decision to decrease the number of cases that his office referred to Brannon and to otherwise minimize Brannon's being hired as a competency/insanity evaluator in forensic matters." (Complaint ¶ 24). However, this conclusory statement is wholly left unsubstantiated, and cannot be presumed correct.[7]

As argued above, the Defendant and his assistants must have complete discretion to carry out their functions as criminal defense attorneys, including the unfettered ability to choose which expert witnesses to hire. In light of this fact, it is impossible for the Plaintiff to allege "a sequence of events from which one could ... plausibly infer a retaliatory motive." *Id.* Instead, what Plaintiff describes in the complaint is a series of actions taken by the Public Defender's Office in the course of representing its clients. As such, not only does the Plaintiff fail to plead that the Defendant harbored a retaliatory motive towards him in any way, but it is clear that he cannot do so given the Public Defender's absolute right to choose an expert witness.

### III. CONCLUSION

---

[7] *See Iqbal,* 129 S.Ct. at 1951 (explaining that conclusory allegations are not entitled to a presumption of truth); *Sinaltrainal v. Coca-Cola Co.,* 578 F.3d 1252, 1266 (11th Cir.2009) (stating that "in testing the sufficiency of the plaintiff's allegations, we do not credit ... conclusory allegations as true"); *Cotton v. Mass. Mut. Life Ins. Co.,* 402 F.3d 1267, 1278 (11th Cir.2005) (concluding that conclusory allegations are not "well-pleaded factual allegations" that must be accepted as true).

Plaintiff ignores the fact that the Eleventh Amendment bars his attempt to recover monetary damages from the Defendant in his official capacity. Plaintiff further ignores the requirements to be entitled to injunctive or declaratory relief, and as a result wholly fails to state a basis for any such relief.

Most importantly, the fatal flaw of Plaintiff's complaint is that it ignores the Public Defender's right as criminal defense attorneys to choose what expert witnesses it hires on behalf of its clients without outside interference. The Plaintiff has no constitutional right, nor any contractual right, to work as the Public Defender's expert, and his attempt to assert such a right in the guise of a first amendment retaliation claim under Section 1983 is entirely inappropriate. Given the Public Defender's necessary autonomy to choose its witnesses, there are no circumstances under which the Plaintiff could state a plausible claim under Section 1983. Accordingly, his complaint fails to plead causation, fails to show the Defendant restricted the exercise of his First Amendment right, fails to establish the Defendant harbored a retaliatory motive towards him and fails to show that the Defendant acted under color of state law. Based on the allegations contained in the Complaint, there are no circumstances under which the Plaintiff could ever plead a First Amendment retaliation claim, and because affording the Plaintiff an opportunity to amend his complaint would be futile, his Complaint must be dismissed with prejudice. Therefore, the Defendants respectfully request that the Court dismiss the Plaintiff's complaint with prejudice.

WHEREFORE, Defendant respectfully requests that this Honorable Court grants its Motion to Dismiss with prejudice and for such further relief that this Court may deem appropriate.

Respectfully submitted,
BILL McCOLLUM
ATTORNEY GENERAL

/S John J. Bajger
JOHN J. BAJGER (Florida Bar number 027459)

E-mail address: john.bajger@myfloridalegal.com
Office of the Attorney General
1515 N. Flagler, Suite 900
West Palm Beach, Florida 33401
Tel. (561) 837-5000
Fax. (561) 837-5102
Attorney for Defendant Howard Finklestein

**CERTIFICATE OF SERVICE**

I hereby certify that on October 21st, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are authorized to receive electronically Notices of Electronic Filing.

s/John J. Bajger
John J. Bajger
Assistant Attorney General

17

## SERVICE LIST

**Michael P. Brannon, et al. v. Howard Finklestein.**
Case 10-cv-61813-Jordan/McAlliey
United States District Court, Southern District of Florida

William R. Amlong, Esquire
Amlong and Amlong, P.A.
**Counsel for Plaintiff**
500 Northeast Fourth Street
Second Floor
Fort Lauderdale, Florida 33301-1154
954-462-1983 Telephone
EMAIL:WRAmlong@theAmlongfirm.com
[CM/ECF]