UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
(Fort Lauderdale Division)

Case Number: 10-Civ-61813-Jordan/McAliley

MICHAEL P. BRANNON, Psy.D.,
individually, MICHAEL P.
BRANNON, Psy.D., P.A., a Florida
professional services corporation;
and INSTITUTE FOR BEHAVIORAL
SCIENCES AND THE LAW, LLC, a
Florida limited liability company,

 Plaintiffs,

vs.

HOWARD FINKELSTEIN,
individually and in his official
capacity as Broward County Public
Defender,

 Defendant.
_____/

## First Amended Complaint

### Count I: Claim Under 42 U.S.C. § 1983 for Violation of First Amendment

Plaintiffs, Michael P. Brannon, Psy.D.; Michael P. Brannon, Psy.D., P.A.; and the Institute for Behavioral Sciences and the Law, LLC, sue defendant Howard Finkelstein both individually and in his official capacity as Public Defender for the 17th Judicial Circuit of Florida, and allege:

## Introduction and Summary

1.     This is an action by a forensic psychologist (and the business entities through which he practices) to whom the Broward County Public Defender's Office paid hundreds of thousands of dollars annually for psychological evaluations of its clientele — until the psychologist angered the Public Defender in 2007 by giving exculpatory testimony before the Florida Judicial Qualifications Commission against a judge whom the Public Defender personally disliked.  The Public Defender immediately told another lawyer that as a result of the psychologist's testimony to the commission, the psychologist would be getting a "big surprise" about his referrals.  Subsequently, the Public Defender's Office has not only reduced its referrals to the psychologist from more than $500,000 a year to zero, but also has (among other things) aggressively sought to block criminal judges from appointing him as an independent examiner and even to keep the State Attorney's Office from hiring him as a prosecution expert, has sought to develop testimony by expert witness through making untrue representations to those witnesses about the psychologist's practices, and has filed a complaint against the psychologist's license.  The psychologist, as well as his professional business entities, sues pursuant to 42 U.S.C. § 1983 for declaratory and injunctive relief, for compensatory and punitive damages against the Public Defender individually, and for his costs and litigation expenses because of the Public Defender's retaliation against the

psychologist for exercising his first-amendment right to give truthful testimony.

## Jurisdiction and Venue

2. This case arises under the First Amendment to the United States Constitution, as extended to the States by the Fourteenth Amendment, and 42 U.S.C. § 1983. This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

3. The claim being sued upon arose in Broward County, Florida, which is where the claim arose and where the defendant maintains its place of business.

## Parties

4. Plaintiff Michael P. Brannon, Pys.D., is a psychologist who has specialized in forensic psychology for the more than 20 years that he has been licensed by the State of Florida. Plaintiff Michael P. Brannon, Psy.D., P.A., is the Florida professional services corporation that, together with Sherrie Bourg Carter, Psy.D., P.A., owns the Institute for Behavioral Sciences and the Law, the Florida limited liability company, through which Brannon practices psychology and to which his professional fees are paid. (Brannon, his professional association and the limited liability company will be referred to jointly throughout this Complaint as "Brannon.")

5. Defendant Howard Finkelstein ("Finkelstein") is the elected Public Defender for the Seventeenth Judicial Circuit of Florida. At all times material, Finkelstein and his assistants acted towards Brannon under color of state law. Howard Finkelstein personally is the final policy maker for the

Public Defender's Office. He is sued both in his individual capacity and, for purposes of declaratory and injunctive relief, as well as attorney's fees and costs, in his official capacity.

**General Allegations**

6.     Brannon, for most of the more than 20 years that he has practiced forensic psychology, enjoyed a steadily increasing stream of referrals from both Finkelstein's office and that of Finkelstein's predecessor, Al Schreiber, to examine indigent criminal defendants for the purpose of determining whether they were competent to stand trial or met the Florida standard to be considered not guilty by reason of insanity, and to then submit reports to the court.

7.     The volume of Brannon's public-defender cases grew steadily, increasing to $546,000 in 2006 and $483,000 for the first 11 months of 2007 for the examinations and reports (in addition to what Brannon was paid for testimony as an expert witness) — all of it paid through public funds.

8.     Brannon, who during the first 11 months of 2007 received an average of more than 142 referrals a month from Finkelstein's office, never prior to December 2007 received any criticism of either his methodology or his conclusions as to the competency/sanity of Finkelstein's clients.

9.     The percentages of Brannon's findings of competency to stand trial, criminal insanity, and malingering on the part of Public Defender clients were similar to both his findings when retained by either the State Attorney's

Office or private defense attorneys, as well as being in line with state and national norms.

10. Brannon's volume of business, however, dropped precipitously following his testimony to the Judicial Qualifications Commission December 6, 2007, as a witness called on behalf of Hon. Cheryl Aleman.

11. Judge Aleman was a circuit court judge against whom lawyers from Finkelstein's office had filed charges concerning the antagonism she displayed in January 2006 in denying three motions to recuse her.

12. The JQC found Judge Aleman guilty of, essentially, abusive behavior and recommended a public reprimand, with which finding and recommendation the Florida Supreme Court concurred.

13. During the JQC hearing, however, Brannon had testified December 6, 2007 — after being subpoenaed by Judge Aleman's attorney, David Bogenshutz, Esquire — that Judge Aleman had never displayed any disrespect towards Brannon during the many times that Brannon had appeared before her as an expert.

14. Within a few days of that testimony, Michael Gottlieb, Esquire, a private-practice criminal defense lawyer, overheard Finkelstein say, essentially: "Did you heard what Brannon did?  He testified for Aleman. He's going to get a big surprise in the work that he gets."

15. The "surprise" was immediate and, indeed, "big":

    a. Brannon's referrals from Finkelstein's office, which had averaged more than 142 for each of the preceding 11 months of 2007,

dropped to 60 during December 2007, to 669 for the entire year of 2008, and to 168 for the first eight months of 2009; and

   b. Brannon's income from public-defender referrals plummeted from $502,200 in 2007 to $195,975 in 2008, to $57,762.50 in the first eight months of 2009, and to $0 from September 2009 until the date of the filing of this action.

  16. Brannon also had enjoyed a significant volume of referrals from criminal division judges of both the Broward County misdemeanor and felony courts as an independent examiner, e.g., 730 in 2006, 956 in 2007, 945 in 2008, and 1,119 in 2009.

  17. In February 2010, however, Finkelstein prevailed upon Chief Judge Victor Tobin to stop allowing criminal court judges to select whichever psychiatrist, psychologist or physician they wished for court appointments, so long as he were qualified pursuant to § 916.115(1), FLA. STAT. (2009), and to require them to select solely from a rotation of every licensed psychologist who expressed a desire for court appointments and met the statutory qualifications.

  18. As a result of Judge Tobin's acquiescing in Finkelstein's suggestion for a rotation for the appointment of court psychologists — a suggestion concerning which State Attorney Michael Satz was not consulted — Brannon's numbers of appointments dropped from 1,119 during 2009 to 118 during the first six months of 2010.

19.     Not only did Finkelstein's office push for the institution of a strict rotation, but when Brannon's name would come up in that rotation as one of the potential examiners, Finkelstein during 2008 and 2009 would resist his appointment on the grounds that he was now biased against Finkelstein's office — biased because it was no longer referring to him the hundred of thousands of dollars worth of business that it did prior to his testifying favorably for Judge Aleman.

20.     Finkelstein's assistants were ordered to object to Brannon's appointment by the court as a competency examiner, indeed, even in cases — e.g., June 29, 2010 in <u>State of Florida v. Ivory McCutcheon</u> — in which Brannon had recently found the defendant incompetent to stand trial, which testimony was favorable to its client.

21.     Finkelstein's office also attempted to interfere with Brannon's being retained by the State Attorney's Office, i.e., unsuccessfully filing a motion to strike him as a witness when he was engaged by the State as its expert to dispute the insanity defense raised in <u>State of Florida v. Daniel Palcu</u>, a first-degree murder trial.

22.     Finkelstein's office, meanwhile, did not confine itself to on-the-record objections, but engaged in ex parte contacts, too — e.g., when Douglas Brawley, one of several of Finkelstein's chief assistant public defenders, approached County Judge Ian Richards in the courthouse parking lot during early 2010 and informed Judge Richards essentially: "We are not

using Dr. Brannon anymore and we'd appreciate it if you would consider that."

23. Lawyers from Finkelstein's office, meanwhile, provided another forensic psychologist, engaged as an expert on the professional ethics of forensic psychologists, with false information that during the time that Brannon was getting more business from the Public Defender's office, he would reciprocate by attempting to broker deals with the State Attorney's Office for more lenient pleas for Public Defender clients.

24. Finkelstein additionally has used his authority as Public Defender to reach outside the courthouse to attempt to harm Brannon, e-mailing Bradley Cohen, the president of the Professional Association of Criminal Defense Lawyers, and criticizing a favorable profile of Brannon that it had published in the June 2010 edition of the <u>Broward Defender</u>.

25. Finkelstein and his office most recently also filed a complaint with the State of Florida against Brannon's professional license, which is currently pending.

26. By behaving as he is doing, Finkelstein is using the administrative power of his elected state office to deny Brannon access to the state funds used to pay for competency examinations and expert testimony when requested by not only the Public Defender's Office, but also by the State Attorney's Office and state court judges.

27. Finkelstein, although he may not enjoy a personal relationship with the thousands of clients represented by the Public Defender's Office, is

an elected public official who enjoys total control over the procedures and personnel of that office:

    a.    Pursuant to Art. V, § 18 of the Florida Constitution, Finkelstein is elected solely by the voters of Broward County;

    b.    Pursuant to § 27.58, FLA. STAT. (2009), Finkelstein is the chief administrator of all public defender services performed in Broward County; and

    c.    Pursuant to § 27.53(1), FLA. STAT. (2009), each assistant public defender in Broward County serves at the pleasure of Finkelstein.

28.    Beginning immediately after Brannon's testimony in favor of Judge Aleman, for example, Finkelstein began using his authority as the administrative head of the Public Defender's Office to order his assistants to cease using Brannon as a forensic expert, and to oppose his appointment as a court's expert:

    a.    notwithstanding that a number of Finkelstein's assistants had for years so engaged Brannon, enjoyed a good working relationship with Brannon, and felt that Brannon's expertise would benefit the individual defendants that they were representing; and

    b.    notwithstanding that Florida Bar Rule of Professional Responsibility 4-5.4(d) ("Exercise of Independent Professional Judgment") provides that "A lawyer shall not permit a person who recommends, employs, or pays the lawyer to render legal services for another to direct or

regulate the lawyer's professional judgment in rendering such legal services."

29.  Brannon's truthful testimony before the JQC in favor of Judge Aleman was, as a matter of law, speech protected by the First Amendment to the United States Constitution.

30.  Brannon's favorable testimony about Judge Aleman was a substantial or motivating factor in Finkelstein's decision to decrease the number of cases that his office referred to Brannon, to otherwise seek to minimize Brannon's being hired as a competency/insanity evaluator in forensic matters, to provide false evidence against him to an expert witness, and to file an ethics complaint against Brannon with Florida licensing officials.

31.  As a direct, natural and proximate result of the behavior of Finkelstein's actions towards Brannon, Brannon has suffered damages, including but not limited to:

    a.  lost earnings;

    b.  diminishment of earning capacity; and

    c.  emotional distress and mental anguish.

32.  Finkelstein's wilful disregard of Brannon's clearly established rights to be free from retaliation for exercising his rights to testify truthfully are in such reckless disregard of Brannon's constitutional rights as to entitle Brannon to punitive damages against Finkelstein in his individual capacity, to

punish Finkelstein and to deter him and others like him from such conduct in the future.

33. Finkelstein's reprisal against Brannon for Brannon's exculpatory testimony in favor of Judge Aleman is causing Brannon irreparable harm, i.e., a violation of his First Amendment right to give truthful testimony, for which there is no plain, adequate, or complete remedy at law.

34. If not enjoined by this Court, Finkelstein will continue to use his office as Public Defender to inhibit Brannon's engagement as a forensic expert in retaliation for Brannon's testimony on behalf of Judge Aleman.

WHEREFORE, Plaintiffs, Michael P. Brannon, Psy.D.; Michael P. Brannon, Psy.D., P.A.; and the Institute for Behavioral Sciences and the Law, LLC, pray that this Court will grant judgment for them, and against Defendant, Howard Finkelstein, both individually and in his official capacity as Public Defender for the Seventeenth Judicial Circuit of Florida:

*One*, determining and declaring that Finkelstein's actions against Brannon constitute a violation of Brannon's first-amendment rights;

*Two*, enjoining Finkelstein, in both his individual and his official capacities, and anyone working in concert with Finkelstein, from continuing to retaliate against Brannon;

*Three*, awarding damages, including punitive damages, against Finkelstein in his individual capacity;

*Four*, awarding costs, including attorney's fees and litigation expenses, against Finkelstein both in his individual and official capacities; and

*Five*, granting such other and further relief as is just.

### Demand for Jury Trial

Plaintiffs demand jury trial by jury on all issues so triable.

Respectfully Submitted,

/s/     William R. Amlong
WILLIAM R. AMLONG
Florida Bar No: 470228
WRAmlong@TheAmlongFirm.com
KAREN COOLMAN AMLONG
Florida Bar No: 275565
KAmlong@TheAmlongFirm.com
RANI NAIR BOLEN
Florida Bar No:  0029293
Rbolen@TheAmlongFirm.com

AMLONG & AMLONG, P.A.
500 Northeast Fourth Street
Second Floor
Fort Lauderdale, Florida 33301-1154
(954) 462-1983

*Attorneys for the Plaintiffs, Michael P. Brannon, Psy.D., Michael P. Brannon, Psy.D., P.A., and Institute for Behavioral Sciences and the Law, LLC*

## Certificate of Service

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been electronically filed with the United States District Court for the Southern District of Florida and thereby electronically transmitted to counsel of record.

/§   *William R. Amlong*
WILLIAM R. AMLONG

## Service List

John J. Bajger, Assistant Attorney General
Florida Bar number 027459
john.bajger@myfloridalegal.com
Office of the Attorney General
1515 N. Flagler, Suite 900
West Palm Beach, Florida 33401
Telephone (561) 837-5000
Facsimile (561) 837-5102
Attorney for Defendant Howard Finkelstein

\\amlong3\cpshare\CPWin\HISTORY\101025_0001\10CF.1E