UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case Number:  10-Civ-61813-Graham/O'Sullivan

MICHAEL P. BRANNON, etc., et al.,

      Plaintiffs,

vs.

HOWARD FINKELSTEIN, etc.,

      Defendant.

_____/

**Plaintiffs Michael P. Brannon, Psy.D.; Michael P. Brannon, Psy.D., P.A.; and the Institute for Behavioral Sciences and the Law, LLC's Statement of Facts in Opposition to Defendant's Howard Finkelstein's Motion for Final Summary Judgment or in the Alternative, Motion for Partial Summary Judgment**

Plaintiffs provide the following statement of facts in response to Defendant's Howard Finkelstein's Motion for Final Summary Judgment or in the Alternative, Motion for Partial Summary Judgment (DE 104):

## Introduction and Summary

This is a first-amendment case in which the plaintiffs, a forensic psychologist and two entities through which he practices, assert that he was cut out of expert-witness work by the Broward County Public Defender's Office because he testified before the Judicial Qualifications Commission in favor of a circuit judge whom the elected public defender disfavored.

The facts need to be viewed through the prism created by an e-mail that defendant Howard Finkelstein sent to his executive chief assistant, Catherine Keuthan, July 9, 2009, when Ms. Keuthan asked Mr. Finkelstein if he were trying to "make [her] sick" by forwarding an e-mail in which Mr. Finkelstein assured Dr. Brannon that he was still amongst the psychologists whom the Public Defender's Office would use as expert witnesses:

> no, him. death by a 1000 invisible cuts. withering on the vine, pinned and wriggling on the wall with no target or issue or martyrdom for him to seek sanctuary

Deposition of Howard Finkelstein ("Finkelstein Depo"),[1] at 30:19-22 and Exhibit 2.

Plaintiffs' Local Rule 56.1(a) response follows.

## Plaintiffs' Response to Defendant's Statement of Facts

1.     Dr. Brannon does not dispute ¶ 1.

2.     Dr. Brannon does not dispute ¶ 2, but states that 50 percent of the IBSL income goes to Sherrie Bourg Carter, Psy.D., P.A..  Deposition of Michael P. Brannon ("Brannon Depo"),[2] at 32:8-21.

---

[1]The cover page and relevant testimonial pages of, and exhibits to, Mr. Finkelstein's deposition are appended as Attachment 5.

[2]The cover page and relevant testimonial pages of, and exhibits to, Dr. Brannon's deposition are appended to as Attachment 5.

3.      Dr. Brannon disputes ¶ 3[3] and further objects to it as hearsay. See, e.g., Luster v. Ill. Dep't of Corr., 652 F.3d 726, 730, n. 2 (7th Cir. 2011)("a party cannot use his own interrogatory answer, which is almost certainly hearsay when offered by that party himself to prove the truth of its contents, to support or oppose summary judgment").

4.      Dr.  Brannon both disputes the historical accuracy of ¶ 4 and objects to its relevancy.  See ¶ 3, supra.  He also disputes the self-serving ¶ 17 of the Affidavit of Robert Wills in Support of Defendant Howard Finkelstein's Motion for Summary Judgment, DE 104-3, at 4, and ¶ 16 of the Affidavit of Catherine Keuthan in Support of Defendant Howard Finkelstein's Motion for Summary Judgment, DE 104-4, at 3-4 — characterizations of Dr. Brannon's testimony in State of Florida v. Bernard Joseph that are contradicted by the transcript of the testimony, see DE 104-14, at 8 (Transcript pp. 131:6-133:8) — as well as the self-serving characterizations of the Public Defender's Office's motivation.

5.      Dr. Brannon does not dispute ¶ 5.

6.      Dr. Brannon does not dispute ¶ 6.

7.      Dr. Brannon does not dispute ¶ 7.

8.      Dr. Brannon does not dispute ¶ 8.

9.      Dr. Brannon disputes ¶ 9.  George Reres,  the former chief of the Public Defender's Office's homicide unit, testified that he typically offered an initial fee of $1,500, and that a full mental-health evaluation could run $5,000.  Deposition of George Reres ("Reres Depo"),[4] at 41:16-42:17.

---

[3]Defendant took office in January 2005.  Finkelstein Depo, at 15:23-24. An amendment to Article V of the state constitution, prescribing statewide judicial-branch funding, was adopted in 1998.  See Art. V, § 14, FLA. CONST. Although phased in, it was fully effectuated by July 1, 2004, see Art. XII, § 25 — six months prior to Mr. Finkelstein's taking office.  Copies of the two Florida Constitutional provisions are appended as Attachment 3.

[4]The cover page and relevant testimonial pages of Mr. Reres's deposition

(continued...)

10.     Dr. Brannon disputes ¶ 10.  The purpose of offering him such a low fee ($750) for a sanity evaluation in a first-degree murder case was to "bury" him so that the State would not be able to use him.  See Reres Depo, at 39:6-41:15; Deposition of Greg Rossman,[5] at 13:14-15:19.

11.     Plaintiff objects to ¶ 11 as having no foundation other than hearsay:  there is nothing in Ms. Keuthan's affidavit to establish her personal knowledge of the practices of other public defenders' offices.  See El Deeb v. University of Minn., 60 F.3d 423, 428-429 (8th Cir. 1995).[6]

12.     Dr. Brannon does not dispute ¶ 12.

13.     Dr. Brannon does not dispute ¶ 13.

14.     Dr. Brannon does not dispute ¶ 14.

15.     Dr. Brannon does not dispute ¶ 15.

16.     Dr. Brannon does not dispute ¶ 16.

17.     Dr. Brannon does not dispute ¶ 17.

18.     Dr. Brannon does not dispute ¶ 18.

19.     Dr. Brannon disputes ¶ 19 as being incomplete.  See ¶¶ 53-54.

20.     Dr. Brannon does not dispute ¶ 20.

---

[4](…continued) are appended as Attachment 4.

[5]The cover page and relevant testimonial pages of Mr. Rossman's deposition are appended as Attachment 5.

[6]The El Deeb court noted that

> Fed. R. Civ. P. 56(e) requires that affidavits supporting or opposing a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Affidavits asserting personal knowledge must include enough factual support to show that the affiant possesses that knowledge…. In evaluating evidence related to possible summary judgment, a court may not consider affidavits that do not satisfy the requirements of Fed. R. Civ. P. 56(e)….

(Citations omitted.)

21.     As to ¶ 21, Dr. Brannon objects to the relevance of anything he is alleged to have said privately about the late Judge Aleman.

22.     Dr. Brannon disputes ¶ 22 as being incomplete.  See ¶¶ 53-54.

23.     Dr. Brannon objects to ¶ 23 for not specifying any time frame for when he told Mr. Gottlieb that he was going to file suit.  See Deposition of Michael Gottlieb ("Gottlieb Depo"),[7] at 11:8-14.

24.     Dr. Brannon does not dispute ¶ 24, but objects to its relevance.

25.     Dr. Brannon does not dispute ¶ 25, but objects to its relevance.

26.     Dr. Brannon does not dispute ¶ 26, but objects to its relevance.

27.     Dr. Brannon does not dispute ¶ 27.

28.     Dr. Brannon does not dispute the assertion in ¶ 28 that the Public Defender's Office established a wheel in March 2009.  He disputes, however, that ¶ 28 expresses the Public Defender's Office's sole motivation. See ¶ 61.  (Dr. Brannon objects to the citation to the 229-page deposition of Dr. Bourg Carter, Exhibit K, DE 104-13, without any page citation.)

29.     Dr. Brannon disputes the characterization in ¶ 29 of his and Dr. Bourg Carter's objection to rotation systems as "vehement," when the cited passages contain no evidence of "vehemence."

30.     As to ¶ 30, Dr. Brannon disputes that he, in the words of Ms. Keuthan's affidavit, "[t]hroughout the course of Howard Finkelstein taking over and making changes, … expressed his clear displeasure and disagreement with the changes in policies and procedures implemented," a notion for which Ms. Keuthan quotes no statement that she claims in her affidavit, DE 104-4, at 3-4, ¶ 16, to have personally heard Dr. Brannon make.  He also objects to Mr. Finkelstein's using his own interrogatory answer as support for this motion.  See Luster, supra at ¶ 3.

---

[7]The cover page and relevant testimonial pages of Mr. Gottlieb's deposition are appended as Attachment 6.

31.     Dr. Brannon not only disputes the characterization in ¶ 31 of his testimony in <u>State v. Joseph</u>, which the Court may assess by reading it, but requests the Court to strike the exhibit as fraudulent:   The transcript is mislabeled as a "deposition" that occurred June 23, 2009, <u>see</u> DE 104-14, at 1, even though defendant's Statement of Facts characterizes the testimony (which is transcribed in a different type face than the cover page, and which contains no reporter's certification) as occurring in July.  DE 104-23, at 6-7, ¶ 31.  <u>See also</u> Finkelstein Depo, at 25:1-26:2, placing testimony on July 28, 2009.  Mr. Wills's opinions, DE 104-3, at 4-5, ¶¶ 17-18, are irrelevant, since he is not listed in response to Plaintiff's Interrogatory No. 4 as anyone who had any input into the decision to cease using Dr. Brannon as an expert witness.  <u>See</u> DE 104-2, at 9.

32.     Dr. Brannon disputes ¶ 32 as to Mr. Finkelstein's motivation to stop using him as an expert witness.  <u>See</u> ¶ 61.

33.     Dr. Brannon does not dispute ¶ 33.

34.     Dr. Brannon disputes Lynne Desanti and Olga Viana's account of their December 24, 2009 encounter in ¶ 34.  <u>See</u> ¶ 62.

35.     Dr. Brannon disputes the account in ¶ 35 of his meeting with Mr. Finkelstein.  <u>See</u> Brannon Depo, at 126:15-128:1.

36.     Dr. Brannon disputes ¶ 36.  <u>See</u> ¶ 35.

37.     Dr. Brannon does not dispute ¶ 37.

38.     Dr. Brannon does not dispute ¶ 38.

39.     Dr. Brannon possesses no evidence to dispute ¶ 39.

40.     Dr. Brannon does not dispute ¶ 40.

41.     Dr. Brannon does not dispute that he gave the testimony quoted in ¶ 41, but clarifies that it was in response to the question:   "How did it make you feel that the Public Defender's Office they really don't want to work with you anymore?"  <u>See</u> DE 104-18, at 67.  He also objects to it as irrelevant and more prejudicial than probative.

42.     Dr. Brannon does dispute ¶ 42.

43.     Dr. Brannon does not dispute ¶ 43.  He objects to its relevance. He adds that Mr. Finkelstein also personally spoke to Bradley Cohen, the president of the Broward Association of Criminal Defense Lawyers, to criticize the BACDL for publishing an article favorable to Dr. Brannon. Finkelstein Depo, at 39:12-40:15.

44.     Dr. Brannon does not dispute that the Office of the Public Defender wrote the letter referenced in ¶ 44, but does dispute the self-serving statements about the motivation.  See ¶ 61.

45.     Dr. Brannon does not dispute ¶ 45.

46.     Dr. Brannon does not dispute ¶ 46, but objects to it as a legal opinion that Dr. Brannon is incompetent to form.

47.     Dr. Brannon does not dispute that the Office of the Public Defender filed a complaint with the Department of Health, as referenced in ¶ 47, but he does dispute the self-serving statements about motivation. Although Mr. Finkelstein's signature does not appear on the letter, see DE 104-21, at 4, he testified that he personally signed the complaint. Finkelstein Depo, at 41:18-23.

### Plaintiff's Additional Material Facts

48.     Dr. Brannon obtained his doctorate in clinical psychology in 1988, Brannon Depo, at 14:11-15:6, and switched from clinical psychology to full-time forensic psychology in 1994.  Id. at 17:25-19:25.  Sherrie Bourg Carter, Psy.D., became his partner in 1998 or 1999.  Id. at 31:6-10.

49.     From the beginning, the majority of IBSL's business came from government-funded agencies, such as the Broward County Public Defender's Office.  Id. at 39:18-40:21.

50.     Prior to the end of 2007, Dr. Brannon enjoyed a positive reputation amongst assistant public defenders, more of whom liked his work than did not.  Reres Depo, at 20:8-21:7.

51.     When Robert Wills, a chief assistant public defender, informed Dr. Brannon that his office was going to reduce the amount paid for

"downward departure" evaluations, Dr. Brannon agreed and continued to do the same volume.  Brannon Depo, at 176:6-177:3.

52.    Dr. Brannon testified in favor of Judge Aleman pursuant to a subpoena from her attorney, David Bogenshutz, Esquire.  Brannon Depo, at 61:6-11.  "The charges stem[med] from Judge Aleman's behavior in response to three motions to disqualify her made by Assistant Public Defenders Sandra Perlman and Bruce Raticoff on January 24, 2006, the second  day of jury selection in State v. Braynen, a first-degree murder case."  Inquiry Concerning a Judge (No. 06-52) v. Aleman, 995 So. 2d 395, 396 (Fla. 2008).  Although the JQC found Judge Aleman to have violated several judicial canons by behavior that was "the JQC concluded that Judge Aleman's undisputed conduct was 'arrogant, discourteous, and impatient,' as well as '[in]adequate,' 'improper,' 'unacceptable,' and 'unreasonable,'" id. at 399, Dr. Brannon "basically said in 15 minutes of testimony she was never mean to [him]."  Brannon Depo, at 65:25-66:17.

53.    Mr. Finkelstein "was surprised, extremely  disappointed" about Dr. Brannon's testimony, Finkelstein Depo, at 9:7-13, notwithstanding that Mr. Finkelstein's only knowledge of the testimony was derived from "just hearing the buzz in the courthouse."  Id. at 10:25-11:4.  Shortly after learning about Dr. Brannon's testimony, Mr. Finkelstein encountered Mr. Gottlieb, a criminal defense lawyer who had testified against Judge Aleman, congratulated him for having done so, and said "and can you believe Brannon  and  Bogenschutz,  something  to that effect." Id. at 13:9-14:18.  Mr. Finkelstein "expressed dissatisfaction over Dave Bogenschutz defending her and Dr. Brannon testifying on her behalf."  Deposition of Michael Gottlieb ("Gottlieb Depo"), at 7:7-22.  Mr. Gottlieb's opinion was that Mr. Finkelstein "felt that why would anybody from the defense community support such a person who was essentially a prosecutor in a robe."  Id. at 8:5-16.  "I think that that's what the conversation was, like how could anybody testify on behalf of that evil witch," Mr. Gottlieb recalled.  Id. at 26:15-24.

54.     Although Mr. Gottlieb initially testified that he does not recall any other details of the conversation, id. at 8:18-23, he subsequently recalled that he "quickly" telephoned Dr. Brannon about what  Finkelstein had told him — "[m]aybe even a couple of times trying to get a hold of him to let him know about the conversation that I had with Howard." Id. at 9:21-10:12, 32:12-18.  Mr. Gottlieb — although he cannot recall Mr. Finkelstein's exact words — was concerned that Mr. Finkelstein was going to curtail Dr. Brannon's employment by his office.  Id. at 31:2-32:3.  After hearing what Mr. Finkelstein had told Mr. Gottlieb, Dr. Brannon said he "felt that he was being or going to be discriminated against." Id. at 10:13-22.

55.     Immediately following Dr. Brannon's JQC testimony:

a.     Mr. Finkelstein ceased speaking to Dr. Brannon and his partner, ignoring them when they attempted to say hello in a hallway or in his office; and

b.     Referrals from assistant public defenders, which had previously briskly come over Dr. Brannon's office telecopier, immediately dropped off — at the same time as Mr. Gottlieb called Dr. Brannon, subsequent to Mr. Gottlieb's conversation with Mr. Finkelstein, asking whether Dr. Brannon's public-defender referrals had dropped off.  Id. at 70:14-72:14, 92:3-94:7.

c.     Meanwhile, a number of assistant public defenders — Jacob Cohen, Anne LeMaster, Ann Blanford, Natalie Knight Tai, Clark Strandell, Bruce Prober — who had previously routinely engaged Dr. Brannon told him that the office was angry at him because of his testimony and that they now required approval to hire him from Mr. Finkelstein's two top assistants, Catherine Keuthan and Diane Cuddihy, who sought to discourage them from doing so.  Id. at 106:1-108:13, 109:7-11, 110:2-8.

d.     Melissa McNeil, another assistant public defender, told Dr. Bourg Carter that she could not hire Dr. Bourg Carter in a case involving a

child witness — Dr. Bourg Carter's specialty — because of the animosity towards Dr. Brannon.  Bourg Carter Depo, at 88:6-89:2, 120:17-121:7.

56.    More recently, the Public Defender's Office began objecting to Dr. Brannon's being appointed by various criminal division judges as a court's witness to determine competency to stand trial.  See, e.g., Brannon Depo, at 147:13-148:4, 180:14-181:10.

57.    Additionally, assistant public defenders have gone so far as to object to Dr. Brannon's being hired by the State Attorney's Office or, if hired by the State, to sit in on the evaluation by whichever neutral examiner is appointed by the court.  Brannon Depo, at 196:16-197:15.

58.    Nor is Dr. Brannon and his partner, Dr. Bourg Carter, the only targets of Mr. Finkelstein's ire.  Ms. Keuthan recently instructed Mr. Reres not to engage Lori Butts, Ph.D., as an expert, because she had some sort of business association with Dr. Brannon.  Reres Depo, at 105:13-106:6.

59.    Not only did assistant public defenders object in court to Dr. Brannon's appointment, but Elizabeth Sherer, an assistant state attorney, overheard Doug Brawley, at the time a chief assistant, approach County Court Judge Ian Richards sometime during the first half of 2010 as they entered the courthouse from the parking garage to explain that his office had a problem with Dr. Brannon and would not be using him on its cases any longer.  Deposition of Elizabeth Sherer,[8] at 9:18-10:9, 14:22-15:12.

60.    The only instance in which Mr. Finkelstein can recall being dissatisfied with Dr. Brannon's performance in a case on which he had personally engaged him was "many years ago" when Drs. Brannon and Bourg Carter diagnosed a defendant as insane, but state hospital sent the client back to court as having merely been in cocaine withdrawal at the time of the crime.  Finkelstein Depo, at 7:14-8:6.

---

[8]The cover page and relevant testimonial pages of Ms. Sherer's deposition are appended as Attachment 7.

61.    Although Mr. Finkelstein assured Dr. Brannon that he would be amongst the psychologists hired under the rotation system, he assured a top lieutenant in an e-mail that he intended Dr. Brannon to professionally die a

> death by a 1000 invisible cuts. withering on the vine, pinned and wriggling on the wall with no target or issue or martyrdom for him to seek sanctuary

Finkelstein Depo"), at 30:19-22 and Exhibit 2

62.    The Lynne DeSanti incident, see Defendant's Facts, DE 104-23, at 11, ¶ 34, occurred differently than Ms. DeSanti related it in her affidavit. Ms. DeSanti hailed Dr. Brannon, who was in the hallway of a nearly empty courthouse December 24, 2009, demanding — hands on her hips — "Dr. Brannon, do you have some problem with me?"  Brannon Depo, at 153:8-156:11.  Dr. Brannon initially thought that she was kidding, and answered, "No," to which she responded, "Well, it seems like you do."  Id.  He then approached her, following which they exchanged words — including about a courthouse blog run by her husband, Bill Gillen, a lawyer, that had taken shots at Dr. Brannon.  Id.  One of the posts on Mr. Gillen's blog identified by name his daughter, who then because the target of a stalker whom Dr. Brannon had evaluated, who also was a frequent poster on the blog — and who eventually was sentenced to a year's probation for stalking Dr. Brannon's daughter.  Id.  Two weeks after the incident, Mr. Gillen attempted to hire Dr. Brannon as an expert.  Id.

Respectfully Submitted,

/s/     William R. Amlong
WILLIAM R. AMLONG
Florida Bar No: 470228
WRAmlong@TheAmlongFirm.com
KAREN COOLMAN AMLONG
Florida Bar No. 275565
KAmlong@TheAmlongFirm.com

AMLONG & AMLONG, P.A.
500 Northeast Fourth Street
Fort Lauderdale, Florida 33301-1154
(954) 462-1983/ (954) 463-5008 (fax)

**Attorneys for Plaintiffs**

## Certificate of Service

I HEREBY CERTIFY that a true and correct copy of the foregoing has been electronically filed with the United States District Court for the Southern District of Florida and thereby electronically transmitted to counsel of record this 7th day of September, 2012.

/s/ William R. Amlong
WILLIAM R. AMLONG

**Service List:**

WILLIAM R. AMLONG
Florida Bar No. 470228
WRAmlong@TheAmlongFirm.com
KAREN COOLMAN AMLONG
Florida Bar No: 275565
KAmlong@TheAmlongFirm.com

AMLONG & AMLONG, P.A.
500 Northeast Fourth Street
Fort Lauderdale, Florida 33301
(954)462-1983

**Counsel for Plaintiffs**

ALICIA L. LAUFER
Florida Bar No. 414336
alaufer@lauferlawyers.com
COREY S. Laufer
Florida Bar No. 174165
claufer@lauferlawyers.com
JENNIFER L. ELLERKAMP
Florida Bar No. 91411
jellerkamp@lauferlawyers.com

LAUFER & LAUFER, P.A.
2200 NW Corporate Blvd Ste 404
Boca Raton, Florida 334317369
(561) 300-5150

**Counsel for Defendants**